DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| **HANA BANK, in its** Capacity as Trustee of Plus Private Overseas Asset Balanced Investment Trust #1,<br><br>    Plaintiff,<br><br>    vs.<br><br>SOUTH PACIFIC PETROLEUM CORP. and ACCESS YPAO, INC.<br><br>    Defendants. | CIVIL CASE NO. 09-00012<br><br><br><br><br>**O R D E R** |
| MIRAE ASSET SECURITIES CO. LTD. and BYUCKSAN ENGINEERING & CONSTRUCTION CO., LTD.<br><br>    Plaintiffs,<br><br>    vs.<br><br>SOUTH PACIFIC PETROLEUM CORP. and ACCESS YPAO, INC., LTD.<br><br>    Defendants. | CIVIL CASE NO. 09-00013 |
| MIRAE ASSET SECURITIES CO. LTD. and BYUCKSAN ENGINEERING & CONSTRUCTION CO., LTD.<br><br>    Plaintiffs,<br><br>    vs.<br><br>SOUTH PACIFIC PETROLEUM CORP. and HANOM INVESTMENTS, INC.,<br><br>    Defendants. | CIVIL CASE NO. 09-00014 |

| | |
|---|---|
| SOUTH PACIFIC PETROLEUM CORP, | ) |
| Counterclaimant/Cross-Claimant/Third Party Plaintiff, | ) ) ) |
| vs. | ) ) |
| HANA BANK, MIRAE ASSET SECURITIES CO., LTD., BYUCKSAN ENGINEERING & CONSTRUCTION CO., LTD., ACCESS YPAO INC., HANOM INVESTMENTS, INC., BRIAN Y. SUHR, MICHAEL S. HAHM, WOO JONG, KIM, GI TAE KIM AND DOES 1-100, | ) ) ) ) ) ) ) ) |
| Counterdefendants/Cross-claim Defendants/Third Party Defendants. | ) ) ) ) |

The court heard cross claim Defendant Access Ypao Inc.'s motion to disqualify the law firm of Lujan Aguigui & Perez LLP, as well as Co-counsel Mark Smith, from further representing defendant and cross claim plaintiff South Pacific Petroleum Corporation on July 15, 2010. Access Ypao Inc. (Access) seeks to disqualify law firm of Lujan Aguigui & Perez LLP (the Lujan firm) as well as Co-counsel Mark Smith (Smith) from further representing defendant and cross claim plaintiff South Pacific Petroleum Corporation (SPPC) on a conflict of interest that allegedly arises from the Lujan's firm prior representation of Access which is substantially related to the instant action.

At the conclusion of the hearing, the court asked for the submission of additional information. The parties have since filed additional materials. After having reviewed the additional information, the memoranda in support and in opposition to the motions, the replies to the opposition, and the arguments by the parties, the court hereby renders its decision in this Order.

BACKGROUND

The consolidated actions arise from a series of loans by the Plaintiffs to defendants Access Ypao and Hanom Investments. Each of the loans for millions of dollars were secured by a guarantee executed by SPPC in 2007. The loans are in default, and the Plaintiffs seek to collect the amounts owed to them. In their answers, defendants Access Ypao and Hanom Investments

have admitted all the allegations in the Complaint except for the amounts currently owed to Plaintiffs. See Docket No. 8 in CV 09-00012, Docket No. 8 in CV09-00013, and Docket No. 9 in Cv09-00014. According to the Plaintiffs and defendants Access Ypao and Hanom Investments, the only issues remaining are the determinations of the outstanding debt balances, and SPPC's liability under the guarantees it signed.

SPPC filed an Amended Answer on January 5, 2010, which also asserted counterclaims, cross claims, and third party claims. See Docket No. 36. Specifically with regard to Access and Hanom, SPPC asserts that Messrs. Suhr and Hahm - officers of SPPC[1] - set up companies and entities, including Access and Hanom, entirely separate from SPPC. See Amended Answer, Docket No. 36, at ¶49. Beginning in about 2007, it is alleged that Messrs. Suhr, Hahm, and others "schemed to enter into a series of fraudulent multi-million dollar loan transactions for themselves and for the companies Access and Hanom that would benefit them or others personally, but would expose SPPC to extreme and unreasonable risk and financial ruin." See Amended Answer, Docket No. 36, at ¶52. With regard to the SPPC guarantees for Access and Hanom, SPPC further asserts that "[t]he Korean lenders each had actual or constructive knowledge and/or knew Hanom or Access were insufficiently capitalized to secure or repay the indebtedness of the loans and that Access and Hanom were sham entities, vehicles designed to perpetrate the fraudulent loan scheme; and that Access was an entity formed only in February, 2007; and that the loans would contain commercially unreasonable terms that Access and Hanom would never be able to perform. But, that by obtaining the fraudulently or wrongfully procured guarantees, the Korean lenders knew they could, and intended that they would, acquire essentially all of the SPPC assets to satisfy the loan transaction obligations." See Amended Answer, Docket No. 36, at ¶53. Based on these and other similar allegations of wrongdoing, SPPC asserted twelve cross-claims against Access, including fraud, aiding and abetting breach of fiduciary duty, civil conspiracy, RICO, and tortious interference with contract claims.

---

[1] When SPPC was established as a Guam corporation in about 2000, Messrs. Suhr and Hahm were hired as President and Vice President of the company. See Amended Answer, Docket No. 36.

In lieu of filing an answer to the cross-claims, Access and Hanom have filed a motion to dismiss.

On April 16, 2010, Access and Hanom filed a motion to substitute Mr. Razzano in place of prior counsel Thomas Tarpley. See Docket No. 80. The court granted the request on April 22, 2010. See Docket No. 86.

Also on April 16, 2010, Access filed the instant motion to disqualify the Lujan firm from further representing SPPC in this action. See Docket No. 82. The motion alleged that the Lujan firm had previously represented Access in Access' attempt to obtain permitting of a major real estate development in Guam, and that the said former representation was substantially related to the current law suit brought against it by SPPC. On April 21, Access filed an Amended Motion to disqualify the Lujan law firm and SPPC's Co-counsel Smith (the "Amended Motion"). See Docket No. 95. The amended Motion essentially re-asserted the conflict of interest raised in the Lujan firm's prior representation of Access and its current representation of SPPC. Additionally, the Amended Motion sought to disqualify co-counsel Mark Smith on the basis that his close working relationship with the Lujan firm created an "imputed conflict" that required his disqualification.

## DISCUSSION

On January 5, 2010, SPPC filed its amended answer and included therein counterclaims, cross-claims and third party complaints totaling twenty-four (24) causes of action alleged in the various claims filed therein. Included within the twenty-four claims are eleven (11) cross-claims against Access.[2] Access has moved to disqualify the Lujan firm and Smith based upon these cross-claims. In order to better understand and visualize the interaction of all of the claims filed by SPPC against Access, the court finds it helpful to reference and summarize claims by SPPC

---

[2] In the Seventh Count (Paragraph 166), SPPC actually alleges fraud on the part of Access in relation to the $7.3 million guarantee executed by SPPC on January 19, 2007. The court notes, however, that Access had not yet been incorporated on this date. Furthermore, the court has reviewed paragraphs 57 through 74 of the aforesaid claims and finds that the allegations that make reference to the 7.3 million dollar fraud does not reference Access at all within those paragraphs.

against Access. These eleven claims are identified and summarized below:

**Eighth Count**

Fraud (the February 27, 2007 "Guarantee" on the 15 Million Dollar Loan Scheme.

In the Eighth Count, SPPC re-alleged the allegations contained in paragraphs 1 through 174 of the counterclaims, cross-claims and third party claims. It alleged that Access along with counterclaim Defendants caused to be executed the $15,000,000 loan which contained materially false representations; that the guarantee was a product of fraudulent concealment and representation of material facts, using fraudulent and false corporate acts; that cross defendants intended to deceive to make it appear that SPPC had agreed to execute, approve, or ratify and authorize the Guarantee. Access intended to deceive SPPC.

**Ninth Count**

Fraud (the February 27, 2007 "Guarantee" on the 10 Million Dollar Loan Scheme.

In the Ninth Count, SPPC re-alleged the allegations contained in paragraphs 1 through 194 of the counterclaims, cross-claims and third party claims. It alleged that Access along with the other cross Defendants caused to be executed the $10,000,000 loan which contained materially false representations; that the guarantee was a product of fraudulent concealment and representation of material facts, using fraudulent and false corporate acts; that cross defendants intended to deceive to make it appear that SPPC had agreed to execute, approve, or ratify and authorize the Guarantee. Access intended to deceive SPPC.

**Eleventh Count**

Conspiracy to Commit Fraud

In the Eleventh Count, SPPC re-alleged the allegations contained in paragraphs 1 through 202 of the counterclaims, cross-claims and third party claims. It alleged that Access conspired with the others to fraudulently and wrongfully procure guarantees from SPPC, to misappropriate SPPC's assets, in excess of 32 Million Dollars.

**Sixteenth Count**

Participation On or Aiding and Abetting the Breach of a Fiduciary Duty

In Count 16, Access is alleged to have participated in the breach of a fiduciary duty by

conspiring with Suhr and the others to bind SPPC to the loan documents.

**Seventeenth Count**

RICO Act violation (18 USC § 1962(a)

Access is alleged to have violated **§1962(a)** by using income received from racketeering activity to acquire or through collection of an unlawful debt, as principals, to use or invest directly or indirectly any part or portion of such income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce.

**Eighteenth Count**

RICO Act violation (18 USC § 1964(b))

Access is alleged to have violated **§1962(b)** by using income received from racketeering activity to acquire or through the collection of an unlawful debt, involving multiple acts of fraud to acquire or maintain an interest in an enterprise engaged in interstate or foreign commerce.

**Nineteenth Count**

RICO Act violation (18 USC § 1962(c)

Access is alleged to have violated **§1962(c)** by using income received from racketeering activity to acquire or through the collection of an unlawful debt, as principals, to use or invest directly any portion in the activities of an enterprise engaged in interstate or foreign commerce.

**Twentieth Count**

RICO Act violation (18 USC § 1962(a))

Access is alleged to have violated **§1962(a)(b)(c)** using income received from racketeering activity to acquire or through the collection of an unlawful debt, as principals, to use or invest directly any portion in the activities of an enterprise engaged in interstate or foreign commerce.

**Twenty-First Count**

Civil Conspiracy

Access is alleged to have conspired with the others to aid, abet, participate in or commit breaches of fiduciary responsibility and to defraud SPPC through s series of fraudulent loan

schemes.

**Twenty-Second Count**

Guarantees illegal

Access is alleged to have perpetrated a fraud upon SPPC.

**Twenty-third Count**

Tortious Interference with Contract

Access is alleged to have caused SPPC to breach its contract with Hanmi Bank by perpetrating the fraudulent scheme and obtaining the guarantee from SPPC.

**DISCUSSION**

In its amended motion to disqualify, Access advanced several grounds for disqualification. These grounds can be summarized as follows:

A. The Guam rules of professional conduct, and decisions interpreting the model rules, call for the disqualification of the Lujan firm.

    1. The Interests of Access Ypao and SPPC are materially adverse in this lawsuit and Access has not consented to the Lujan firm's representation of SPPC.

    2. The Lujan firm must be disqualified because its former representation of Access Ypao is substantially related to its present lawsuit.

        a. The prior and current representation by the Lujan firm are related considering their nature and scope.

        b. There is a strong likelihood that the Lujan firm obtained confidential information during the prior representation that is detrimental to Access in the current lawsuit.

B. The Guam rules of professional conduct call for the imputed disqualification of Smith.

C. Case law calls for the disqualification of Smith based on his relationship with the Lujan firm.

**Is the Motion to disqualify timely filed?**

Before addressing the motion and Amended Motion, the first issue the court must determine is whether the motions are timely filed. In its opposition to the motion, SPPC first argues that the motions to disqualify its counsel are timely.

It is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." Trust Corp. of Montana v. Piper Aircraft Corp., 701 F.2d 85, 87 (9th Cir. 1983). "Motions to disqualify are often used as a tactical device to delay litigation. Where a party opposing the motion can demonstrate prima facie evidence of unreasonable delay in bringing the motion causing prejudice to the present client, disqualification should not be ordered. The burden then shifts back to the party seeking disqualification to justify the delay." Miller v. Alagna, 138 F. Supp.2d 1252, 1258-59 (C.D. Cal. 2000) (*citing* Zador Corp. V. Kwan, 31 Cal. App.4th 1285, 1302, 37 Cal. Rptr.2d 754, 764 (1995)). "However, a disqualification motion should be denied only if the delay and ensuing prejudice are extreme." Miller, 138 F. Supp.2d at 1259.

With regard to the "unreasonable delay," SPPC asserts that the Lujan firm entered its appearance in this action on or about October 26, 2009.[3] Access allegedly was aware of this fact but did not object. SPPC notes that after it filed the cross-claims against Access on January 5, 2010, Access did not seek the disqualification of the Lujan firm or Mr. Smith, nor did it do so after Access filed its motion to dismiss on February 8, 2010. Instead, Access waited until April 16, 2010 – approximately seven months after the Lujan Firm and Mr. Smith had entered their appearances on behalf of SPPC – to file its motion seeking to disqualify counsel. According to SPPC, if the court were to grant the motions, it would result in undue prejudice to it since counsel has invested substantial hours in this litigation.

In response, Access contends that there was no unreasonable delay on its part in bringing the motion. Although the Lujan firm entered its appearance on behalf of SPPC in October 2009,

---

[3] On October 23, 2009, SPPC filed a substitution of counsel, seeking to replace the Berman firm the Lujan firm and Mark Smith. See Docket No. 16. The court approved the substitution on October 26, 2009. See Docket No. 17.

Access had no reason to become alarmed by such representation until January 7, 2010, when it was served with the cross complaint and summons and realized that it was being sued by its former counsel. See Suhr. Decl., Docket No. 108, at ¶2. On or about March 15, 2010, Mr. Hahm discussed with his counsel the drafting of a motion to disqualify the Lujan firm, but Mr. Hahm was advised that the proper party to bring such a motion would be Access and its board of directors. Id. at ¶3. Thereafter, the board of Access requested Mr. Tarpley to file such a motion. Id. For reasons undisclosed, Mr. Tarpley appeared to have delayed the filing of such a motion, and finally Mr. Tarpley disclosed that he had "a conflict of interest with respect to a disqualification of the Lujan firm." Id. Access thereafter sought new counsel, and approached the Teker firm about representing it and bringing such a motion. Id. at ¶¶3-4. Thus, Access asserts that it was not dilatory in protecting its interest with respect to their attorney-client privilege.

Although SPPC's opposition cites to numerous cases wherein courts have denied motions to disqualify which were untimely filed, those cases are factually distinguishable because the delay in said instances spanned many months, or even years, or were filed just shortly prior to trial as a delay tactic. In this instance, the court is faced with a delay of approximately three months – from the filing of the claims against it in January 2010 to the filing of the motion to disqualify in April 2010. While Access may have been aware of the Lujan Firm's representation of SPPC, Access had no cause for concern until it realized that its former attorneys were suing it. Furthermore, Access has explained that the three-month delay in filing its motion was based in part on Mr. Tarpley's delay and conflict in filing such a motion. Thus, Access had to retain new legal counsel to represent it and assert its rights in maintaining the privileged nature of matters involving the Lujan Firm's prior legal representation of Access. Because the delay here is not unreasonable, and because any prejudice experienced by SPPC is not extreme, the court finds that Access has not waived its right to object to the Lujan Firm's representation of SPPC based on a conflict of interest.

2. <u>Whether the Lujan Firm should be Disqualified</u>

The next issue is whether there is a conflict of interest in the continued representation of

SPPC by the Lujan Firm in light of the former representation of Access by the Lujan firm. The court's Local Rules of Practice which regulate the conduct of the members of this bar states:

> Every attorney admitted to practice before this Court shall familiarize himself or herself with and comply with the standards of professional conduct required of members of the Bar of Guam and contained in the American Bar Association Model Rules of Professional Conduct as adopted on August 2, 1983, and as thereafter amended or judicially construed.

Local Rule GR 22.3(b). The "standards of professional conduct required of members of the Bar of Guam" are set forth in the Guam Rules of Professional Conduct ("GRPC"), which were adopted from the 2002 version of the ABA's Model Rules of Professional Conduct. See Supreme Court of Guam Promulgation Order No. 04-002. Turning to the GRPC, the relevant rule that governs conflicts of interest with regard to former clients is Rule 1.9, which provides:

> a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
>
> . . .
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>     (1) use information relating to the representation to the
>     disadvantage of the former client except as these Rules would
>     permit or require with respect to a client, or when the information
>     has become generally known; or
>     (2) reveal information relating to the representation except as these
>     Rules would permit or require with respect to a client.

Thus, the issue is whether the former representation of Access by the Lujan firm is "substantially related" to the current representation of SPPC by the Lujan firm.

The Supreme Court of Guam has not had the occasion to interpret Rule 1.9, and so thus the court may rely upon the ABA Comments in applying the rules. According to the ABA's Comments,

> [m]atters are "substantially related" for purposes of . . . Rule [1.9] if they *involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter*. For example, a lawyer who has represented a businessperson and learned extensive private financial information about that person may not then represent that person's spouse in seeking a divorce. . . . Information that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying. Information acquired in a prior representation may have

> been rendered obsolete by the passage of time, a circumstance that may be relevant in determining whether two representations are substantially related. In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation.

ABA Model Rule 1.9, cmt. 3 (emphasis added).

According to Access, the Lujan Firm's legal services provided to Access "included the major construction projects and issues involving the obstruction of views of neighboring properties, air space rights, privacy rights, issues regarding bullcart tr[ai]ls, nuisance, design strategies for submittals to Guam Land Use Commission (GLUC) and other governmental entities[,] drafting legal positions, statements and other required submittals for permitting and the GLUC approval process." See Suhr Decl., Docket No. 84, at ¶4. "The legal services also included presentations of the viability of the project and the economic impact the project would have on Guam." " See Suhr Decl., Docket No. 84, at ¶5.

Access argues that the Lujan Firm "actively and vigorously promoted Access' interests in having the [Ypao] project approved as a legitimate, economically and environmentally feasible, and an overall beneficial venture in Guam." See Motion, Docket No. 82, at 11. Mr. Suhr further states that he and "Mr. Hahm both personally met with various members of the Lujan Firm to discuss not only land use and research matter, but litigation and financial advice thereby giving our attorneys all information that they requested and divulged all corporate strategies to the members of the Lujan Firm." " See Suhr Decl., Docket No. 108, at ¶9. This prior representation of it, Access argues, is directly related to the Lujan Firm's current representation of SPPC. SPPC is suing Access with regard to the very real estate projects in which the Lujan Firm represented Access, and it corresponded and received confidential information about Access' finances from Messrs. Hahm and Suhr – who are also being sued by SPPC in relation to the guarantees made on the loans for these projects.

To further emphasize the conflict, Access referenced paragraph 53 wherein SPPC alleged that Access lacked financial ability to re-pay the loans, that it was insufficiently capitalized to secure or repay the indebtedness of the loans, that Access was a sham entity, designed to

perpetrate the fraudulent loan scheme, and that the loans would contain commercially unreasonable terms that Access would never be able to perform. It is argued that SPPC could not have made these allegations had it not been privy to confidential information about the finances of the company.

The Lujan Firm asserts that the prior representation of Access and the current representation of SPPC are not related. Its prior representation of Access was for "obtaining GLUC approval for tentative development plans and a density variance." See David Lujan Decl., Docket No. 98, at ¶1.f. Mr. Lujan states that he was never "made aware of information regarding Access Ypao's finances or the financing of any proposed project." Id. at ¶1.i. The Lujan Firm states that their representation never involved "Access' establishment or creation, legitimacy, business structure, finances, financing of the proposed project, business goals (other than securing GLUC approval . . .), other proposed projects, strategy for business and real estate development, and the like. See Opp'n, Docket No. 97, at 3 and supporting declarations thereto.

In its Reply Brief, Access also raises a new argument for disqualification – that Leilani Lujan is likely to be a necessary witness, which would require disqualification of the Lujan Firm. Supposedly, Ms. Lujan provided Access with litigation advice concerning three suits pending in the Superior Court. The nature of the litigation advice is not explained in Access' Reply Brief.

In its Reply Brief, Access also argued that the Lujan firm acted as its general counsel since it represented Access in three suits in the Superior Court of Guam.

Is the prior representation and the current representation substantially related?

In determining whether the Lujan firm's current representation of SPPC is substantially related to its prior representation of Access, the court is guided by the documents submitted by Access in its initial motion and amended motion to disqualify.

In its motion to disqualify, Access acknowledged that the Lujan firm's work for the company was in relation to its permit application with the GLUC. It required the Lujan firm to perform various services for Access. Theses services are outlined on page three of its motion to disqualify.

In its amended motion, Access includes three letters written by the Lujan firm to the

GLUC. The first letter (Exhibit 1) is dated March 6, 2008 and is addressed to the director of the Bureau of Planning. The letter references Application No. 2008-05, Lots 5143, 5144-3-NEW, and 5144-R3-R4-1, in Tumon and addressed GLUC's opposition to the height and density variances in the project's variance application. The second letter (Exhibit 2) is dated March 21, 2008 and is addressed to the GLUC board. The March 21 letter addressed concerns about "potential obstruction of view and privacy...raised by a few private landowners who reside on the cliff line overlooking Tumon". The letter gave an opinion that a landowner had no natural right to unobstructed light, air, view, or privacy and discussed easements that may create such rights. The third letter (Exhibit 3) is dated May 9, 2008 and is also addressed to the GLUC board. It referenced a meeting held before the GLUC board on Access' application for a density variance. It noted objections which were raised regarding the applicability of the Interim Rules and Regulations for "H" zone and notice. The Lujan firm presented its legal position on the matter.

     In none of these letters is it indicated that the finances or the financial viability of Access' condominium project was at issue or under consideration before the GLUC. Access, however, argues that the Lujan firm promoted Access as a legitimate and viable venture before the GLUC. It is this alleged representation of Access as a legitimate and viable venture before the GLUC that conflicts with the Lujan firm's allegation in the current SPPC representation that Access lacked financial ability to re-pay the loans with Plaintiffs, that it was insufficiently capitalized to secure or repay the indebtedness of the loans, and that Access was a sham entity, designed to perpetrate the fraudulent loan schemes.

     As the court has noted above, none of the above letters indicate that approval of Access' application for a density or height variance was dependent upon the finances of Access or its financial viability. But even if Access' legitimacy and financial viability were relevant considerations in the application process before the GLUC board, Access' legitimacy and financial viability represent different considerations when measured against the loans it procured with Plaintiffs. Access may have financial viability to proceed with an application for a height and density variance before the GLUC but not have financial viability in relation to the $10 Million and $15 Million loans obtained from Plaintiffs. Thus, the court finds that the above

matters (the current and prior representations) do not involve the same transaction or legal dispute.

Moreover, issues regarding the substance of Access' financial viability must be measured in relation to the individual causes of actions alleged by SPPC in the cross claims against Access. The fraud claims, while it does incorporate references to Access' financial viability, appears to be more directed against Access' participation in the fraudulent scheme to deceive and to make it appear that SPPC had agreed to execute, approve, ratify, and authorize the guarantees made by SPPC. Issues regarding the financial viability of Access do not appear to be relevant with regard to the RICO claims, the civil conspiracy, the illegal guarantees, and the tortious interference of contract cross claims.

It is alleged further that the Lujan firm may have gained confidential financial information from Access in relation to its GLUC application that would materially advance its current client's (SPPC) case against it. That Access lacked financial viability to repay its loans, that it was under capitalized and that it was a sham entity could only have been alleged if confidential information was received from Access.

SPPC counters that the allegations in its cross claims against Access regarding financial viability and other similar claims were the result of a review of Access' Articles of Incorporation, its answers to Plaintiffs' complaints, and the loan documents, all of which were public sources. The court notes that in its answers to the Plaintiffs' complaints, Access has admitted all the allegations of the complaints other than accrued interest. It has acknowledged that it is in default under the $10 Million loan as well as the $15 Million loan and that it has failed and refused to pay its outstanding loans due to Plaintiffs. See Answers filed on June 19, 2009 in CV09-00012 and CV 09-00014.

In reviewing Access' Articles of Incorporation, the court notes that it is capitalized at $27,500,000.00, an amount which is in excess of its loans ($25 Million) with Plaintiffs. The

court notes, however, that only twenty (20) percent[4] of the capital stock has been subscribed to and that only $2,500,000.00 has been paid in of the $5,500,000.00 that has been subscribed to by its shareholders. Thus, Access has received only 9% paid in capital of its total capital stock. With paid-in capital that represented only ten (10) percent of Access' total loan obligations with Plaintiffs, coupled with a short two-year[5] loan maturity, and its short corporate life, it would not be unreasonable to surmise the basis of SPPC's financial viability allegations against Access.

In reviewing the Articles of Incorporation, Access' answers to the complaints, the loan documents, and other papers filed herein, the court finds that there is a basis for SPPC's allegations of a lack of financial viability on the part of Access with respect to the repayment of its $25 Million loans which is derived from public information and not the receipt of confidential financial information from Access.

Based upon these findings, the court finds that the Lujan firm's prior representation of Access before the GLUC and its current representation of SPPC in relation to Access' $25 million loans with Plaintiffs are not substantially related.

The court has also reviewed the court pleadings referenced in Mr. Suhr's affidavit regarding billings submitted by the firm which suggests that the Lujan firm represented Access in litigation before the Superior Court. The court finds in its review of these cases that Access was never a party in those three litigations and that the Lujan firm represented SPPC, the company which they are now representing. Thus, there is no evidence which suggests that the Lujan firm acted as general counsel to Access. The court concludes that when Mr. Suhr stated in his affidavit that he discussed litigation and financial advice with the Lujan firm, it must have been in regard to that firm's representation of SPPC. SPPC, and not Access, was the party that was involved in the three referenced cases in the Lujan billing to Access. The fact that Access paid for the invoice does not make its payment and the services rendered pursuant to the invoice as

---

[4] The court does acknowledge, however, that Access has met Guam's statutory requirements for capital stock subscription.

[5] Access' loans with Plaintiffs matured on March 2, 2009.

equivalent to legal services performed on behalf of Access. As the court noted during oral arguments, Mr. Suhr wore several hats as he was an officer of both companies.

Having concluded that the Lujan firm was not involved in any legal representation of Access in the three Superior Court cases referenced in the Lujan firm's invoice to Access, the court finds there is no basis for the disqualification of the Lujan firm based upon the premise that one of its attorneys may be called upon to testify regarding litigation that Access was involved in with regard to the said cases.

The court, having concluded that the Lujan firm's representation of SPPC is not substantially related to its prior representation of Access, the court finds that discussion of Co-counsel Smith's disqualification has been rendered moot.

CONCLUSION

Based upon the reasons stated herein above, the court finds that the Lujan firm's prior representation of Access is not substantially related to its current representation of SPPC. The matters do not involve the same transaction or legal dispute. The court further finds that substantial confidential financial information could not have been obtained by the Lujan firm in the representation of Access and that SPPC's allegation regarding Access' financial viability to meet its current obligations under its loans to Plaintiffs were derived from a public source, evidenced in Access' answers to the complaints, SPPC's examination of the loan documents contained in the complaints, and its review of Access' Articles of Incorporation. Access' motion to disqualify the Lujan firm is hereby denied.

Having found that the Lujan firm's prior representation of Access is not substantially related to its current representation of SPPC, the motion to disqualify Co-counsel Smith based upon his ties to the Lujan firm has been rendered moot, and is thus denied.

Dated this 13th day of August, 2010.



**/s/ Joaquin V.E. Manibusan, Jr.**
**U.S. Magistrate Judge**